**BOWLES, Price Adm'r, v. HENRY LUSTIG & CO., Inc.**

District Court, S. D. New York.
Oct. 17, 1945.

Callman Gottesman, Chief Enforcement Atty., New York Metropolitan Office, and Isadore Fried, Chief Food Enforcement Section, both of New York City, for plaintiff.

Wegman, Spark, Hoffman & Burke, of New York City, for defendant.

HULBERT, District Judge.

*Motion for temporary injunction denied and restraining order dated September 19, 1945, vacated.*

This action was commenced September 19, 1945, to recover treble damages in the amount of $39,062.40 and for a permanent injunction for violations of OPA Maximum Price Regulation No. 426 as amended.

This application seeks to restrain the defendant pendente lite from selling fruits and vegetables in excess of "ceiling" as provided by said Regulation.

For the purposes of this motion, the Court makes the following

### Findings of Fact

1. In the judgment of the Administrator, defendant has engaged in acts and practices which constitute a violation of Section 4(a) of the Emergency Price Control Act of 1942, as amended, 56 Stat. 23,

765, 57 Stat. 566, Public Law 383, 78th Cong., 58 Stat. 632, 50 U.S.C.A.Appendix, § 901 et seq., Executive Order 9250, 50 U.S.C.A.Appendix, § 901 note, 7 F.R. 7871, Executive Order 9328, 50 U.S.C.A.Appendix, § 901 note, 8 F.R. 4681, hereinafter called the "Act," in that it has violated Maximum Price Regulation No. 426 as amended.

2. Jurisdiction of this action is conferred upon the Court by Section 205(c) of the Act.

3. The defendant has been engaged in business for 28 years; is a member of the New York Fruit Produce and Purveyors Association, Inc., and was a charter member of that organization.

4. License Order No. 1 issued pursuant to the Act automatically granted a license to make sales under Price Control to all persons then or thereafter making such sales. It does not appear that said automatic license has ever been revoked as to this defendant.

5. During the period of one year prior to the commencement of this action, hereinafter called "said period," Maximum Price Regulation, hereinafter referred to as MPR 426, has been and still is in effect pursuant to Section 2 of the Act, establishing maximum prices for fresh fruits and vegetables for table use.

6. MPR 426 was promulgated by the Office of Price Administration July 10, 1943 (8 F.R. 9546, July 13, 1943), for the purpose of establishing maximum prices for sales of fresh fruits and vegetables for table use, other than sales at retail.

7. By Supplemental Order No. 72, License Order No. 1 was made applicable to MPR 426 (See Sec. 9(a) of said Regulation).

8. The Office of Price Administration purporting to act under the delegation of authority contained in Section 2(b) of MPR 426 as amended, through the Regional Administrator at New York, promulgated Order G–1 effective May 22, 1944, and Revised Order G–1 effective July 9, 1945, pursuant to which orders markups were established for certain New York City purveyors, and Section 5(a) of said Order G–1 specifically enumerates 22 "purveyors" who have received permission to carry on business as authorized purveyors.

9. Section 3 of Order G–1, as amended, defines a purveyor as "one who meets all of the following requirements:

"(a) Purchases the kind of fresh fruits and vegetables being priced.

"(b) Maintains facilities for washing, trimming, sorting, grading, repacking, plant commercial-refrigeration and warehousing and employs these facilities in connection with his sale of the fresh fruits and vegetables covered by this order and being priced.

"(c) Employs salesmen to call on institutional and commercial users.

"(d) Makes less-than-carlot or less-than-trucklot or less-than-original-container sales to institutional or commercial users such as restaurants, ships, hotels, hospitals, camps and the War Shipping Administration.

"(e) Delivers within the metropolitan area surrounding and including the City of New York.

"(f) Maintains at all times an inventory consisting generally of all fresh fruits and vegetables available.

"(g) Extends credit to not less than 75% of all of his customers.

"(h) Was doing business in the manner described and maintained the facilities enumerated in this section during the calendar year of 1942 and continuously thereafter, unless this requirement is waived specifically by the Office of Price Administration."

Section 5(b) further provided:

"Any person who meets the requirements of Section 3 hereof may apply in writing to the Office of Price Administration, 350 Fifth Avenue, New York 1, New York, for recognition as a 'purveyor' and permission to take the markups established herein. Such an application must state the manner in which the applicant does business and the extent to which he satisfies the requirements of Section 3 hereof. If any applicant is to be recognized as a 'purveyor' and granted permission to take the markups allowed by this order, that recognition and permission will be granted by an amendment hereto. Unless and until such recog-

610

nition and permission are granted, the markups allowed herein may not be taken."

10. The defendant has never formally filed an application "for permission" to do business as a purveyor because the Regional Administrator insists that the defendant furnish him with a profit and loss statement for the years 1942 and 1943, which the defendant refused to do.

11. No actual violation is charged in the complaint or in the moving affidavits except that the defendant is alleged to have charged prices in excess of those applicable to it under MPR 426, although the prices charged by the defendant do not appear to differ from those of the 22 purveyors listed in Section 5(a) of said Order G–1, as amended.

12. All of the transactions of the defendant alleged to have taken place, occurred more than six months after the date of, and approval and enactment of the Act. None of said sales were made to a person purchasing such commodities for use or consumption other than in the course of trade or business.

13. The plaintiff has failed to establish that the defendant sold, delivered and offered to sell and deliver fresh fruit and vegetables at prices in excess of the maximum prices established therefor by the Regulation.

### Discussion

The Court finds nothing in the Act, the Regulation, Order G–1, or Order G–1 as amended, which requires the defendant to furnish a profit and loss statement.

Section 922 of Title 50, U.S.C.A.Appendix, authorizes the Administrator, "to make such studies and investigations, to conduct such hearings, and to obtain such information as he deems necessary or proper to assist him in prescribing any regulation or order under this Act * * * or in the administration and enforcement of this Act * * * and regulations, orders and price schedules thereunder."

He is further authorized, in this connection, to utilize the process of subpoena (subdivision c) and "no person shall be excused from complying with any requirement under this Section because of his privilege against self-incrimination" but he is entitled to immunity (subdivision g), the right to make a record of his testimony and to be represented by counsel (subdivision i).

The Administrator cannot choose a method of securing information other than that authorized by law.

When this situation developed on the argument of the motion it seemed to the Court that the differences existing between the parties should be readily adjusted by a conference between counsel and the head of the Bureau of Price Control and an adjournment of the argument was had for that purpose. But, upon resumption thereof, it appeared that no progress had been made, as disclosed by answering and replying affidavits. Thereupon the Court inquired of counsel for the Administrator— what was the real purpose of the profit and loss statement—and was informed that as the Office of Price Administration did not have the man power to make an inspection and visualize and determine the sufficiency of the refrigeration system of the defendant, it had, therefore, adopted the requirement and submission of a profit and loss statement as a means of determining that factor.

The Court is unable to perceive how an examination of applicant's profit and loss statement for 1942 and 1943 would enable the Price Administrator to satisfy himself as to the adequacy of the defendant's refrigeration system and the efficiency of its operation, in 1945.

### Conclusions of Law

1. There is no authority in the Act, the Regulation, or Order G–1, or Order G–1 as amended, which gives the Office of Price Administration, or the Price Administrator, the broad authority to require the production and delivery of a profit and loss statement in connection with an application for permission to be classified as a purveyor.

2. The plaintiff has wholly failed to present facts which would justify this Court, in the exercise of a sound discretion, to grant an injunction pendente lite upon the record presented.

Settle order on one day's notice.